COURT OF APPEALS DIV I
2015 OCT 26 AM 9: 19



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72101-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD HOWARD TURPIN, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: October 26, 2015 |
| | ) | |

VERELLEN, J. — This appeal presents the question whether the public trial right is implicated when a trial judge excuses a juror who reports as ill while court is not in session. Donald Turpin fails to show the excusal for illness constituted a process that has historically been open to the public, and public access does not play a significant role in that administrative process. Because neither prong of the experience and logic test is satisfied, Turpin's public trial right is not implicated. Accordingly, we affirm.

## FACTS

The State charged Donald Turpin with burglary in the second degree, theft in the first degree, trafficking in stolen property in the first degree, and leading organized crime. At the close of evidence, the court instructed the jury and announced that closing arguments would begin after a recess for lunch. The lunch recess lasted approximately two hours. Once the jurors returned, the court stated, "Ladies and gentlemen, Juror Number 3 got sick, you probably know that, and so we've excused

Juror Number 3. Could our alternate juror please take your materials and please have a seat right there? You're on the jury now."[1]

The clerk's minutes note that the juror's excusal occurred off the record:

11:27:40 Recess

Off Record:

Due to illness, Juror 3 is excused from further consideration of this cause. The Court instructs the Bailiff to excuse Juror 3.

On Record:

1:22:54 Jury present.

The court having excused Juror 3, Juror 14 will take Juror 3's place.[2]

Turpin did not object to the sick juror's excusal or to the replacement with the alternate juror. The jury ultimately found Turpin guilty as charged.

Turpin appeals and seeks to "reconstruct" the record to prove a courtroom closure occurred.

## ANALYSIS

Turpin argues the court violated his public trial right when it excused the sick juror off the record. But we conclude the court's excusal of the juror did not implicate Turpin's public trial right.

An alleged violation of the right to a public trial presents a question of law that this court reviews de novo.[3] Both our federal and state constitutions guarantee a

---

[1] Report of Proceedings (RP) (May 21, 2014) at 1105.

[2] Clerk's Papers (CP) at 217.

[3] State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012).

criminal defendant's right to a public trial.[4] Article I, section 10 of the Washington Constitution provides an additional guaranty of open court proceedings. "Justice in all cases shall be administered openly, and without unnecessary delay."[5] There is a strong presumption that courts are to be open at all stages of trial.[6]

A party who proposes closure of a proceeding must show "an overriding interest based on findings that closure is essential to preserve higher values and narrowly tailored to serve that interest."[7] In State v. Bone-Club, our Supreme Court set forth a five-factor test courts must use to evaluate the constitutionality of a proposed closure.[8]

---

[4] Id. (citing WASH. CONST. art. I, § 22; U.S. CONST. amend. VI).

[5] WASH. CONST. art. I, § 10.

[6] State v. Sublett, 176 Wn.2d 58, 70, 292 P.3d 715 (2012).

[7] State v. Momah, 167 Wn.2d 140, 148, 217 P.3d 321 (2009).

[8] 128 Wn.2d 254, 906 P.2d 325 (1995). The Supreme Court held that trial courts must consider the following factors on the record:

> "1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.
>
> 2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.
>
> 3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.
>
> 4. The court must weigh the competing interests of the proponent of closure and the public.
>
> 5. The order must be no broader in its application or duration than necessary to serve its purpose."

Id. at 258-59 (alteration in original) (quoting Allied Daily Newspapers v. Eikenberry, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

Our Supreme Court has held that a public trial claim may be raised for the first time on appeal and that a violation is generally structural error warranting a new trial.[9]

"But not every interaction between the court, counsel, and defendants will implicate the right to a public trial or constitute a closure if closed to the public."[10] Before deciding if the court violated Turpin's right to a public trial, we must determine if the process at issue "implicates the public trial right, thereby constituting a closure at all."[11] In State v. Sublett, our Supreme Court adopted the experience and logic test articulated by the United States Supreme Court to determine if a particular process must remain open to the public absent a Bone-Club analysis.[12]

> The first part of the test, the experience prong, asks "whether the place and process have historically been open to the press and general public." The logic prong asks "whether public access plays a significant positive role in the functioning of the particular process in question."[13]

The guiding principle is "whether openness will 'enhance[ ] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'"[14] If the answer to both questions is "yes," the public trial right attaches, and

---

[9] State v. Njonge, 181 Wn.2d 546, 554, 334 P.3d 1068, cert. denied, 135 S. Ct. 880, 190 L. Ed. 2d 711 (2014).

[10] Sublett, 176 Wn.2d at 71.

[11] Id.

[12] 176 Wn.2d 58, 73, 292 P.3d 715 (2012) (rejecting the distinction between legal and ministerial proceedings and adversarial and factual proceedings to determine whether the proceeding at issue implicates the public trial right) (citing Press-Enter. Co. v. Superior Court, 478 U.S. 1, 8-10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)).

[13] Id. (citation omitted) (quoting Press-Enter., 478 U.S. at 8).

[14] Id. at 75. (alteration in original) (quoting Press-Enter. v. Superior Court, 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)).

the superior court must apply the Bone-Club factors to evaluate whether a proposed closure is constitutional.[15]

The public trial right analysis has evolved significantly over the last few years. In 2014, our Supreme Court utilized a three-step inquiry to analyze public trial right claims.[16] Applying the threshold experience and logic test, a court first focuses on the process at issue to determine whether the public trial right is implicated.[17] Second, the court asks whether a closure occurred.[18] Third, the court examines whether the closure was justified.[19] If the court concludes after applying the experience and logic test that the right to a public trial does not apply to the process, it need not reach the second and third steps in the analysis.[20]

*Experience*

Here, the process at issue is the administrative process of excusing jurors who report as ill while court is not in session. Washington cases demonstrate that the "experience" regarding the overall process of excusing sitting jurors and prospective jurors draws a distinction between purely administrative decisions and decisions based on challenges for cause.

In State v. Wilson, Division Two of this court held that Wilson failed to show the excusal of two jurors who were physically ill before voir dire began in the courtroom was

---

[15] State v. Paumier, 176 Wn.2d 29, 35, 288 P.3d 1126 (2012); State v. Wise, 176 Wn.2d 1, 12, 288 P.3d 1113 (2012).

[16] State v. Smith, 181 Wn.2d 508, 513-14, 334 P.3d 1049 (2014).

[17] Id.

[18] Id.

[19] Id.

[20] Id. at 519.

improper or constituted a process that has historically been open to the general public.[21]

The Wilson court determined that "both the Legislature and our Supreme Court have acknowledged that a trial court has discretion to excuse jurors outside the public courtroom for statutorily-defined reasons, provided such juror excusals do not amount to for-cause excusals or preemptory challenges traditionally exercised during voir dire in the courtroom."[22] Because the trial court had broad discretion to excuse prospective jurors upon a showing of undue hardship or any reason deemed sufficient by the court pursuant to RCW 2.36.100(1), Wilson failed to satisfy the experience prong of the experience and logic test.[23]

Other cases also recognize the distinction between pure administrative excusals and other juror disqualifications.[24] The basic distinction between purely administrative excusals and other disqualifications is consistent with RCW 2.36.110 and CrR 6.5 standards. "RCW 2.36.110 and CrR 6.5 place a *continuous obligation* on the trial court

---

[21] 174 Wn. App. 328, 345, 298 P.3d 148 (2013).

[22] Id. at 344 (footnote omitted).

[23] Id. at 346. RCW 2.36.100(1) provides: "Except for a person who is not qualified for jury service under RCW 2.36.070, no person may be excused from jury service by the court except upon a showing of undue hardship, extreme inconvenience, public necessity, or any reason deemed sufficient by the court for a period of time the court deems necessary."

[24] See State v. Russell, No. 85996-5, 2015 WL 4943899, at *5 (Wash. Aug. 20, 2015) ("Determining whether a juror is able to serve at a particular *time* or for a particular *duration* (as in hardship and administrative excusals) is qualitatively different from challenging a juror's ability to serve as a neutral factfinder in a particular *case* (as in peremptory and for-cause challenges)."); State v. Love, 183 Wn.2d 598, 606, 354 P.3d 841 (2015) ("Unlike administrative or hardship excusals, for cause and peremptory challenges can raise questions about a juror's neutrality and a party's motivation for excusing the juror that implicate the core purpose of the right, and questioning jurors in open court is critical to protect that right.").

to excuse any juror who is unfit and unable to perform the duties of a juror."[25] RCW 2.36.110 states, "It *shall* be the duty of a judge to excuse from further jury service any juror, *who in the opinion of the judge*, has manifested unfitness as a juror by reason of . . . any physical or mental defect or by reason of conduct or practices incompatible with proper and efficient jury service."[26] Similarly, CrR 6.5 directs that if "at any time before submission of the case to the jury a juror is found unable to perform the duties[,] the court shall order the juror discharged."

Although no cases directly address midtrial off-the-record excusals of jurors who report as ill, the general "experience" with excusing ill jurors is to allow the trial court to make such purely administrative decisions off the record. Notably here, the juror's illness came to light during a lunch recess while court was not in session. The court's broad discretion to administer the process of dealing with an ill juror necessarily includes making contemporaneous decisions about whether to excuse that juror.

Turpin fails to show the excusal of the juror who reported as ill while the court was not in session constituted a process that has historically been open to the public. Accordingly, he fails to satisfy the experience prong of the Sublett test.

*Logic*

Turpin also fails to satisfy the logic prong of the test. He has not shown that "public access plays a significant positive role in the functioning of" the process of

---

[25] State v. Jorden, 103 Wn. App. 221, 227, 11 P.3d 866 (2000) (emphasis added) (trial court's removal of a juror on grounds that her fitness as a juror had been compromised, without further questioning of the juror, was not an abuse of discretion); see also State v. Elmore, 155 Wn.2d 758, 773, 123 P.3d 72 (2005) ("Washington and other courts have granted broad discretion to the trial judge in conducting an investigation of jury problems.").

[26] (Emphasis added.)

7

excusing a juror who reports as ill when court is not in session.[27] There are few alternatives when a juror becomes ill during a court recess. Turpin concedes that the court has the authority to allow an ill juror to receive medical attention, go to the hospital, or visit a doctor and that the court can make that decision off the record.

Turpin argues that the court must defer making any "formal" decision whether to legally excuse a juror until court has resumed. But delaying such a decision is not a significant positive role in the functioning of that process. On the contrary, it would play a negative role to compel the court to artificially delay making a decision whether to excuse an ill juror until court is back in session. An excusal for illness off the record does not implicate the basic fairness of Turpin's trial or the appearance of fairness essential to public confidence, especially when, as here, the court promptly announced its decision in open court as soon as court was back in session.

Turpin relies upon State v. Jones, where Division Two of this court held that the random drawing of alternate jurors by the court clerk during a recess at the close of evidence constituted a courtroom closure that implicated Jones's public trial right.[28] In analyzing the logic prong, the Jones court focused on two of the purposes of the public trial right: "basic fairness to the defendant and reminding the trial court of the importance of its functions."[29] The court concluded those purposes were implicated because the off-the-record selection by the court clerk lacked safeguards against manipulation and chicanery:

---

[27] Sublett, 176 Wn.2d at 73 (quoting Press-Enter. Co., 478 U.S. at 8).

[28] 175 Wn. App. 87, 91, 303 P.3d 1084 (2013).

[29] Id. at 101-02.

The issue is not that the drawing in this case was a result of manipulation or chicanery on the part of the court staff member who performed the task, but that the drawing could have been. Where such a drawing occurs during a court recess off the record, the defendant and the public lack the assurance of a truly random drawing that they would have if the drawing were performed in open court on the record. This lack of assurance raises serious questions regarding the overall fairness of the trial and indicates that court personnel should be reminded of the importance of their duties. Accordingly, we conclude that considerations of logic "implicate the core values the public trial right serves."[30]

But the concerns of possible manipulation and chicanery in <u>Jones</u> are not present here. The record reflects that the juror's off-the-record excusal was promptly memorialized in the clerk's minutes shortly after the jury returned to their seats after lunch. And the court contemporaneously went on the record to expressly acknowledge "Juror Number 3 got sick, *you probably know that*, and so we've excused Juror Number 3."[31] Thus, both the clerk's minutes and the record negated any concerns about secrecy and informed the public of what had occurred.

Once the court determined Juror 3 was physically unfit to serve, the logical and practical course of action was to excuse Juror 3 and seat the alternate juror. Consistent with <u>Wilson</u>, Juror 3's off-the-record excusal for illness, rather than for cause or misconduct, was not "'a proceeding so similar to the trial itself that the same rights attach, such as the right to appear, to cross-examine witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence.'"[32] Instead, it was a purely administrative process unrelated to the substantive facts of Turpin's case, which did not

---

[30] <u>Id.</u> (quoting <u>Sublett</u>, 176 Wn.2d at 72).

[31] RP (May 21, 2014) at 1105 (emphasis added).

[32] <u>Wilson</u>, 174 Wn. App. at 346 (quoting <u>Sublett</u>, 176 Wn.2d at 77).

invoke any of the "concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness."[33]

We need not address whether disqualification of a sitting juror on other grounds would implicate the public trial right. As to illness revealed while court is not in session, the public trial right is not implicated.

We need not address Turpin's argument about closure nor his motion to reconstruct the record as it relates to closure.

Affirmed.

WE CONCUR:

_Spearman, C.J._

_Cox, J._

---

[33] Smith, 181 Wn.2d at 518; see State v. Sadler, 147 Wn. App. 97, 114, 193 P.3d 1108 (2008) ("A defendant does not, however, have a right to a public hearing on purely ministerial or legal issues that do not require the resolution of disputed facts.).