# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>           v.<br><br>COREY ALEXANDER VENTAR,<br><br>               Appellant. | DIVISION ONE<br><br>No. 79178-8-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Corey Alexander Ventar appeals from the judgment entered on a jury's verdicts finding him guilty of rape in the second degree and rape of a child in the third degree. He contends that the judgment violates his right to be free from double jeopardy. Ventar also avers that his convictions were supported by insufficient evidence, that the trial court erred in admitting certain testimony, and that the use of the victim's initials in the jury instructions constituted both an impermissible comment on the evidence and an unconstitutional court closure.

The State concedes that the trial court's entry of judgment on convictions for both rape in the second degree, premised on rape of an incapacitated victim, and rape of a child in the third degree based on a single underlying act violated Ventar's right to be free from double jeopardy. We accept this concession and order vacation of Ventar's conviction of rape of a child in the third degree. We

affirm the trial court's ruling in all other challenged respects. Accordingly, we affirm Ventar's conviction of rape in the second degree.

I

In August 2016, 19-year-old Corey Ventar came to Snohomish County to visit his friend T.R. On August 4, 2016, Ventar and T.R. met with T.R.'s girlfriend, S.G., and her friend, J.C., to attend a "Movie in the Park Night" at Willis Tucker Park. J.C. was 15 years old.

Movie nights in Willis Tucker Park were typically attended by 1,300 to 2,000 people. J.C. and her friends went to "movie night" every week to drink and socialize. On this occasion, J.C. drank "[a]t least half" of a bottle of vodka. S.G. and J.C. split a tablet of Xanax that they obtained from T.R. and Ventar. Ventar also later gave J.C. an additional quarter tablet of Xanax.

J.C. became intoxicated and, according to several witnesses, was having difficulty walking, talking, and understanding her surroundings. Another witness remembered that J.C. could walk and talk, but had a slowed reaction time.

Park director Tom Teigen observed J.C. and became concerned. Teigen spoke with her and, although she was able to respond to his questions, he noticed that her speech was slurred and that she quickly became less coherent. Teigen determined that J.C.'s mother should be called to take her home. Ventar offered to walk J.C. home but it was "obvious" to Teigen that J.C. was so intoxicated that she could not physically succeed in walking home. Teigen believed that J.C.'s friends were calling her mother, however, and gave his

2

attention to other park patrons. When he returned to check on J.C., she and her friends were gone.

In fact, Ventar, J.C. and several others had hidden in the nearby woods. J.C. and Ventar remained in the woods while J.C.'s friends left to tell Teigen that they had secured a ride home for J.C. When these teens returned, Ventar and J.C. were no longer at that location. After approximately 45 minutes, during which her friends were unable to find J.C., S.G. located J.C.'s younger sister and asked her to call J.C.'s mother.

Testimony diverged as to what occurred while Ventar and J.C. were alone in the woods. Although J.C. does not recall much of the evening, she remembered seeing Ventar on top of her, and feeling a pressure between her legs. J.C. put her hand down and said "no" before "black[ing] out."

According to Ventar, J.C. began kissing him and they each performed oral sex on the other. They did not have vaginal sex, Ventar stated, because J.C. told him she did not want to have sex because she was "still a virgin," and "only 16."[1] Ultimately, J.C. and Ventar walked out of the woods together and sat on picnic benches. Several of J.C.'s friends saw them, noticed that there was something in J.C.'s hair, and escorted her to the bathroom.

Another teen testified to helping J.C. into the bathroom after finding her lying face down in a bush nearby.

---

[1] J.C. was, in fact, 15 years old at the time of these events.

3

Meanwhile, J.C.'s mother arrived at the park. J.C.'s mother and S.G. walked into the bathroom together and found J.C. vomiting and unable to stand. J.C.'s mother helped her into the backseat of her car.

J.C. then told her mother that she had been raped. J.C. was transported to the hospital. A forensic nurse examined J.C. and observed that her hymen had a recent laceration and that there was dirt and debris in her genital area. The nurse also conducted swabs testing from a standard sexual assault kit and cut off a piece of J.C.'s hair that appeared to have semen on it. Lab tests indicated that semen was present in the hair sample, and in external anal, perineal, and oral swabs. Saliva was discovered from the perineal and external anal swabs. DNA from the hair, perineal, and oral samples matched a DNA sample provided by Ventar.

Ventar was charged with rape in the second degree and rape of a child in the third degree. At trial, although her full name had been used in open court, J.C.'s initials were used in the written jury instructions.

Ventar was convicted on both counts. He was sentenced to a period of incarceration of 120 months to life on the second degree rape conviction, with a 36 month sentence on the child rape conviction. The sentencing court did not treat the two convictions as the same criminal conduct at sentencing, thus including each offense in the offender score of the other. The sentencing court also ordered a $100 DNA collection fee and certain mandatory legal financial

obligations, imposing interest on those legal financial obligations "from the date of the judgment until payment in full."

Ventar appeals.

II

The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution prohibit multiple punishments for the same offense. State v. Gocken, 127 Wn.2d. 95, 100, 896 P.2d 1267 (1995).

Ventar contends—and the State concedes—that entering judgment on the convictions for rape in the second degree and rape of a child in the third degree, under the circumstances of this case, violated double jeopardy. We agree.

The State's concession is motivated by our Supreme Court's decision in State v. Hughes, 166 Wn.2d 675, 212 P.3d 558 (2009). In that decision, the court described the issue before it thusly:

> Whether convictions for rape of a child in the second degree and rape in the second degree due to nonconsent by reason of mental incapacity or physical helplessness which arise out of the same act violate double jeopardy.

Hughes, 166 Wn.2d at 681. The court answered that query in the affirmative, explaining that

> [a]lthough the elements of the crimes facially differ, both statutes require proof of nonconsent because of the victim's status. Regardless of whether nonconsent is proved by the age of the victim and the age differential between the victim and the perpetrator or by the mental incapacity or physical helplessness of the victim, both statutes protect individuals who are unable to consent by reason of their status.

Hughes, 166 Wn.2d at 684.

The State correctly concedes that the age differentials between rape of a child in the second and third degrees do not remove the latter offense from the reach of the Hughes decision.[2]

The remedy for a violation of double jeopardy protections is to vacate the conviction of the lesser offense. State v. Albarran, 187 Wn.2d 15, 22, 383 P.3d 1037 (2016). Here, the lesser of the two offenses is rape of a child in the third degree.[3] Therefore, we order that conviction vacated and remand for resentencing on the remaining conviction.

III

Ventar next argues that insufficient evidence supports each of his convictions. Because we have already determined that the conviction for rape of a child in the third degree must be vacated, we need not address the evidentiary sufficiency underlying that verdict. As to the other conviction, because a rational trier of fact could have found the elements of rape in the second degree proved beyond a reasonable doubt, Ventar's contention fails.

Evidence is sufficient to support a conviction when, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime proved beyond a reasonable doubt. State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn

---

[2] The Hughes decision is consistent with case law preceding the effective date of the Sentencing Reform Act of 1981, chapter 9.94A RCW. See, e.g., State v. Birgen, 33 Wn. App. 1, 651 P.2d 240 (1982).

[3] RCW 9A.44.050(2) establishes that rape in the second degree is a Class A felony. RCW 9A.44.079(2) establishes that rape of a child in the third degree is a Class C felony.

therefrom." Salinas, 119 Wn.2d at 201. We defer to the trier of fact on issues of conflicting testimony, the credibility of witnesses, and the persuasiveness of the evidence. State v. Thomas, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

Ventar asserts that the State proffered insufficient evidence to support his conviction of rape in the second degree because it did not prove that J.C. was physically helpless or mentally incapacitated at the time that he had sexual intercourse with her or, alternatively, that Ventar was unaware that J.C. was physically helpless or mentally incapacitated. These arguments are without merit. Numerous witnesses remembered J.C. slurring her speech, unable to walk on her own, and appearing unaware of her surroundings after "chugging" half of a bottle of vodka and taking Xanax. A park official who interacted with J.C. was concerned enough about J.C. that he determined that her mother should be called.

A rational finder of fact could infer that a 15-year-old girl whose level of intoxication was as described by multiple witnesses, and who an adult had already identified as physically unable to walk home, was physically helpless or mentally incapacitated. Similarly, a rational finder of fact could find it unbelievable that Ventar merely perceived J.C. as "happy" and "excited."

From the evidence adduced at trial, a rational finder of fact could find that J.C. was physically helpless or mentally incapacitated, and that Ventar was aware of J.C.'s helplessness or incapacitation. Thus, a constitutionally sufficient quantum of evidence supports Ventar's conviction of rape in the second degree.

IV

Ventar next avers that the trial court erred by admitting evidence of J.C.'s subsequent suicide attempt. Because no adequate objection was interposed to this testimony, Ventar failed to preserve this claim of error for review. Appellate relief is not warranted.

A party may not raise an objection that was not properly preserved in the trial court absent manifest constitutional error. RAP 2.5(a). An evidentiary error is not a constitutional error. State v. Powell, 166 Wn.2d 73, 83, 206 P.3d 321 (2009). "A party may only assign error in the appellate court on the specific ground of evidentiary objection made at trial." State v. Collins, 45 Wn. App. 541, 546, 726 P.2d 491 (1986) (citing State v. Guloy, 104 Wn.2d 412, 421, 705 P.2d 1182 (1985)); accord ER 103 (a)(1).[4]

When asked about her daughter's demeanor following the events of August 4, 2016, J.C.'s mother testified that although, for the first few weeks, J.C. seemed to be "in denial," things became more difficult later on. She went on to testify that she had "had to deal with the suicide attempt." At this point, Ventar's counsel stated, "Objection," but specified no basis therefor.

On appeal, Ventar now argues that it was not necessary to state a specific ground for his objection because the specific ground was apparent from the

---

[4] ER 103 states:
   **(a) Effect of Erroneous Ruling**. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
   (1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike is made, stating the specific ground of objection, if the specific ground was not apparent from the context.

context. Ventar then undercuts this claim by offering several different grounds for potential objection—that the testimony was inflammatory, or irrelevant, or unduly prejudicial. However, these are distinct grounds for objecting. See ER 401, 402, 403. Ventar's approach on appeal makes clear that the *specific* basis for objection urged on the trial court is still not clear. This is the reason that the requirement of ER 103(a)(1) exists. The claim of error was not preserved for review.

Accordingly, Ventar does not establish an entitlement to appellate relief.

V

Ventar next argues that the trial court erred by denying his motion for a mistrial. Ventar claims that a State witness, S.G., violated a trial court order in limine by testifying that she and J.C. purchased Xanax from Ventar.

A trial court should grant a mistrial only when the defendant has been so unfairly prejudiced that nothing short of a new trial can ensure that the defendant will be fairly tried. State v. Emery, 174 Wn.2d 741, 765, 278 P.3d 653 (2012). We review the trial court's denial of a mistrial request for an abuse of discretion. State v. Rodriguez, 146 Wn.2d 260, 269, 45 P.3d 541 (2002). We will find such an abuse of discretion only when "'no reasonable judge would have reached the same conclusion.'" Rodriguez, 146 Wn.2d at 269 (internal quotation marks omitted) (quoting State v. Hopson, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989)).

Here, the trial court's ruling in limine did not address the sale of drugs, which neither party raised as an issue, but did exclude evidence of bad acts except "activity surrounding Xanax." Following testimony by the State's witness

that the Xanax was purchased by J.C., as opposed to given to her, the trial court sustained Ventar's objection. Ventar then asked for a mistrial, asserting that he had not been informed that this testimony would be presented. Following an offer of proof by the State that an interview with the State's witness had included references to drug sales and had been provided to Ventar, the trial court changed its ruling on the issue. The trial court ruled that, without the prejudice of unfair surprise, the sale of Xanax was admissible res gestae evidence.

Testimony may be admissible as res gestae evidence, "'if it is so connected in time, place, circumstances, or means employed that proof of such other misconduct is necessary for a complete description of the crime charged, or constitutes proof of the history of the crime charged.'" State v. Schaffer, 63 Wn. App. 761, 769, 822 P.2d 292 (1991) (quoting 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE § 115, at 398 (3d ed.1989)), aff'd, 120 Wn.2d 616, 845 P.2d 281 (1993). Res gestae evidence is admissible "in order that a complete picture be depicted for the jury." State v. Tharp, 96 Wn.2d 591, 594, 637 P.2d 961 (1981).

Here, J.C.'s inability to consent to sexual intercourse was proved by evidence of her intoxication (as a result of drinking alcohol and taking Xanax provided to her by Ventar). Thus, a reasonable judge could rule admissible evidence as to how it was that J.C. obtained the Xanax. There was no unfair prejudice.

The trial court did not abuse its discretion by denying Ventar's request for a mistrial.

10

VI

Ventar next claims that the use of J.C.'s initials, instead of her full name, in the jury instructions (1) constituted an impermissible judicial comment on the evidence, (2) relieved the State of its burden of proof, and (3) together with the use of J.C.'s initials in other court documents amounted to a court closure in violation of Ventar's right to a public trial. We disagree.

A

The Washington Constitution prohibits a judge from conveying personal attitudes to the jury, or instructing a jury that "'matters of fact have been established as a matter of law.'" State v. Levy, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). However, the use of a child victim's initials in jury instructions do not constitute a judicial comment on the evidence. State v. Mansour, 78708-0-I, slip op. at 1 (Wash. Ct. App. Aug. 24, 2020), https://www.courts.wa.gov/opinions/pdf/787080.pdf.

This claim of error fails.

B

Ventar additionally claims that the use of J.C.'s initials undermined the presumption of innocence by "preemptively telling the jury that the court was protecting her as a sexual assault victim," thus depriving him of his constitutional right to due process. We disagree.

"Instructions must convey to the jury that the State bears the burden of proving every essential element of a criminal offense beyond a reasonable

doubt." State v. Bennett, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007). "It is reversible error to instruct the jury in a manner relieving the State of its burden to prove every element of a crime beyond a reasonable doubt." Bennett, 161 Wn.2d at 307. An allegation that a jury instruction relieved the State of this burden is an error of constitutional magnitude reviewable for the first time on appeal. State v. Ridgley, 141 Wn. App. 771, 779, 174 P.3d 105 (2007). We review challenged jury instructions de novo in the context of the instructions as a whole. Bennett, 161 Wn.2d at 307. However, it is established that the use of a child victim's initials in jury instructions does not undermine the presumption of innocence. Mansour, slip op. at 8.

C

Finally, Ventar contends that the use of J.C.'s initials in the jury instructions violated his right to a public trial. Again, we disagree.

"Both our federal and state constitutions guarantee a criminal defendant's right to a public trial." State v. Turpin, 190 Wn. App. 815, 818, 360 P.3d 965 (2015). "An alleged violation of the right to a public trial presents a question of law that this court reviews de novo." Turpin, 190 Wn. App at 818. A public trial claim may be raised for the first time on appeal. Turpin, 190 Wn. App. at 819.

Here, Ventar asserts that the use of J.C.'s initials constituted a court closure for which the trial court was required to conduct an on-the-record analysis applying the framework set forth in Seattle Times Co. v. Ishikawa, 97

Wn.2d 30, 640 P.2d 716 (1982). He further argues that because the trial court did not conduct such an analysis, reversal is required.[5]

An Ishikawa analysis is required only when the public trial right has been implicated and when a closure is contemplated. Mansour, slip op. at 9. A closure has occurred "'when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave,'" or "where a portion of a trial is held someplace 'inaccessible' to spectators." State v. Love, 183 Wn.2d 598, 606, 354 P.3d 841 (2015) (quoting State v. Lormor, 172 Wn.2d 85, 93, 257 P.3d 624 (2011)).

Here, J.C. testified using her full name in open court and was consistently referred to by her full name throughout the proceedings. J.C.'s name was fully accessible to spectators and open to any member of the public who physically appeared in the courtroom, or who read a transcript of the trial court proceedings. No closure occurred. No Ishikawa analysis was necessary. Ventar's argument thus fails.

VII

Ventar next makes several arguments regarding his sentence. First, he contends that his offender score was incorrectly calculated because the two convictions were erroneously not treated as the same criminal conduct. Second, he avers that certain legal financial obligations should not have been imposed.

---

[5] Ventar also filed a motion to strike the State's brief, which used J.C. and other juveniles' initials instead of their names. We deny that motion.

A

Because we have determined that the child rape conviction must be vacated, the same criminal conduct claim is moot.

B

Ventar asserts that a DNA collection fee should not have been imposed on him because (1) he has prior felony convictions for which his DNA would have been collected, and (2) the State did not provide any evidence that his DNA had not already been collected. His argument has merit. "[W]hen a defendant has a prior Washington felony conviction, the State must show that the defendant's DNA has not previously been collected." State v. Houck, 9 Wn. App. 2d 636, 651 n.4, 446 P.3d 646 (2019). On remand, the trial court shall strike the DNA collection fee unless the State meets its burden of proof.

Ventar additionally claims that interest should not have been imposed on his nonrestitution legal financial obligations. Again, this claim has merit. The plain language of RCW 10.82.090(1)[6] makes clear that interest should not accrue on nonrestitution legal financial obligations. On remand, the trial court shall comply with the statute when resentencing Ventar.

VIII

Ventar also submitted a statement of additional grounds for review. Pursuant to RAP 10.10, a defendant may file such a document to raise, identify, and discuss those matter the defendant believes have not been adequately

---

[6] "As of June 7, 2018, no interest shall accrue on nonrestitution legal financial obligations." RCW 10.82.090(1).

addressed by defense counsel. We will not, however, consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of the alleged errors, and we are not obligated to search the record for support of claims made in a defendant's statement of additional grounds. RAP 10.10(c).

In his statement of additional grounds, Ventar argues that because he was also drinking alcohol and using Xanax during the events at issue, he was also necessarily incapable of consent. Accordingly, Ventar reasons, a "double negative" rule should apply and "cancel out" his criminal behavior. Our law recognizes no such rule.

Here, the jury was instructed that a reasonable belief that J.C. was not mentally incapacitated or physically helpless was a defense to rape in the second degree. If the jury believed that Ventar had proved by a preponderance of the evidence that he was so intoxicated that he was unable to perceive J.C.'s mental incapacity or physical helplessness, the jury's verdict would have reflected this finding. Ventar's novel legal assertions fail to establish a ground for appellate relief.

Ventar's conviction of rape in the second degree is affirmed. Ventar's conviction of rape of a child in the third degree must be vacated, and the matter is remanded to the trial court for resentencing.

Affirmed in part, reversed in part, and remanded.

_____
Dwyer, J.

WE CONCUR:

_____     _____
Chun, J.                      Mann, C.J.