IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  54170-0-II |
| Respondent, | |
| v. | |
| JASON DONALD STREIFF, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—Jason Donald Streiff appeals his convictions for three counts of third degree child molestation and his sentence. He raises numerous claims, including improper venue for count III, violation of his right to vicinage for count III, insufficient evidence for count I, improper opinion testimony, prosecutorial misconduct, unconstitutional to convict instructions, a double jeopardy violation, sentencing errors, ineffective assistance of counsel, and cumulative error.

Streiff timely objected to venue on count III, and the trial court erred by denying his motion to sever or dismiss the count without prejudice. The remainder of Streiff's claims do not merit reversal. We reverse count III without prejudice, affirm counts I and II, and remand for resentencing consistent with this court's opinion.

FACTS

Two cousins, 14-year-old CMJ and 15-year-old KLW, separately reported to their families, and eventually to law enforcement, that Streiff molested them after a family birthday party in Winlock, in Lewis County. Streiff was a friend of CMJ's father and KLW's stepfather. He attended the family birthday party, drank significantly, and spent the night in the basement of KLW's home.

Both girls reported that Streiff molested them in the middle of the night, or the early morning hours of the following day, while they were trying to sleep.

CMJ testified that she fell asleep on the floor of the bedroom where Streiff was sleeping. She woke up to Streiff getting "on top of" her and kissing her on the lips. 1 Verbatim Report of Proceedings (VRP) at 166. When CMJ started to get up, Streiff grabbed her hand and asked her to "come cuddle with him." 1 VRP at 167. As she left the room, CMJ noticed that Streiff had started to unzip his pants. She went out to sleep on a futon in between her brother and another cousin. Later, CMJ testified that Streiff came and laid "on top of" her again. 1 VRP at 168. "He was trying to find [her] lips" again, but her head was turned. *Id.* Streiff did not stop until CMJ's brother made a noise. These incidents formed the basis of count I.

KLW testified that she was in bed in a different bedroom around 6:00 a.m. when Streiff got into bed with her, put his arm over her, and started kissing her neck and by her ear. She testified that Streiff "put his hand on [her] chest underneath . . . [her] shirt," and that after she told him to stop, he "push[ed his hand] downwards down [her] body down to [her] lower private part" over her clothing. 2 VRP at 277. Streiff "rubbed a little bit," and then KLW pushed him off and left the room. 2 VRP at 278. This was the basis for count II.

CMJ lives with her family in Castle Rock, in Cowlitz County. CMJ testified that on the day after the party, Streiff came over to her house and sat next to her on the couch. CMJ's dad was in the room, sitting on another couch, and CMJ testified that "when [her] dad looked away to the TV video games, [Streiff] would grab [her] breasts or . . . go down there with his hand over [her] clothes." 1 VRP at 170. CMJ clarified that by "down there" she meant "the vagina area." 1 VRP at 171. This was the basis for count III.

Both girls told their parents about these incidents, and both girls' parents reported the incidents to police. After interviewing CMJ and KLW, Deputy Andrew Scrivner arranged an interview with Streiff to discuss the allegations.

Streiff agreed to the interview, and the two met at Streiff's home. Scrivner did not give *Miranda*[1] warnings prior to the interview. When asked about the allegations from the night of the party, Streiff said that he did not remember anything and "he may have blacked out." 1 VRP at 126. When asked about the allegation that he grabbed CMJ during the day while her dad played video games, Streiff denied it. At a CrR 3.5 hearing, the trial court ruled that this was a noncustodial interrogation and Streiff's statements during the interview were admissible.

Before trial, Streiff moved to dismiss or sever count III because venue was improper. Streiff explained that the conduct alleged in count III occurred in Cowlitz County, not Lewis County. The State agreed that the alleged offense occurred in Cowlitz County, but nevertheless argued that it was permissible to join the counts for trial. The trial court denied Streiff's motion, finding that the counts were "closely related." 1 VRP at 8. Streiff did not argue vicinage as a separate basis for dismissing count III.[2]

The jury found Streiff guilty of all three counts. Streiff appeals his convictions and his sentence.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Vicinage and venue are distinct but related rights. They prescribe who will hear a case and where the case will be heard, respectively, and both rights arise from the same section of the Washington Constitution. *See* WASH. CONST. art. I, § 22 ("[T]he accused shall have the right to . . . trial *by an impartial jury of the county* in which the offense is charged to have been committed." (emphasis added)); *see also City of Bothell v. Barnhart*, 172 Wn.2d 223, 230-31, 257 P.3d 648 (2011) (discussing vicinage).

ANALYSIS

I. VENUE FOR COUNT III

Streiff argues the trial court violated his constitutional right to proper venue because it tried him in Lewis County for conduct that occurred in Cowlitz County. We agree.

A.    Additional Facts Related to Venue

The State filed an information in Lewis County Superior Court on December 7, 2018, alleging two counts of third degree child molestation. Count I was based on sexual contact with CMJ, and count II was based on sexual contact with KLW. In the affidavit of probable cause filed on the same date, the State described only the events occurring during the night and early morning hours after the birthday party, including that Streiff laid on top of CMJ twice and kissed her, or tried to kiss her, in two different rooms.

At the time of the omnibus hearing on April 11, 2019, the State had only charged Streiff with counts I and II.

On April 19, 2019, the State added count III, also alleging sexual contact with CMJ. The only difference between counts I and III was that the State alleged count I occurred "[o]n or about and between August 11th, 2018 through August[ 12th], 2018, both days inclusive," while it alleged count III occurred "[o]n or about August 12th, 2018." Clerk's Papers (CP) at 11-12. The amended information alleged that count III occurred "in the County of Lewis." CP at 12. The record does not contain a new affidavit of probable cause.

Streiff was arraigned on the amended information on April 25, 2019. When Streiff was arraigned, the trial court noted that count III involved the same victim as count I, and defense counsel stated that "the conduct alleged occurred during the same period of time with the same

4

victim." VRP (Apr. 25, 2019) at 6. There was no other discussion about the facts underlying count III at this time.

On July 18, 2019, the trial court held a hearing to confirm the trial. The trial court denied a defense motion for a continuance, and set trial to begin the following week. Also on July 18, 2019, at 4:43 p.m., the State filed a second amended information alleging that count III occurred "in the State of Washington," but not in Lewis County specifically. CP at 19.

As a preliminary matter on the first day of trial, July 23, 2019, the trial court proceeded with arraignment on the second amended information. Streiff's counsel objected to count III on the basis of venue, moving to sever or dismiss the count. Counsel explained that the second amended information "provid[ed] notice of a specific incident the State's alleging . . . occurred in Castle Rock which is in Cowlitz County, Washington." 1 VRP at 5. Streiff's counsel argued that this was his first opportunity to object to venue on count III.

The State responded that it was the first amended information that added count III, saying, "[W]e've discussed that I am adding this third count for what happened on the second day of August 12th in Castle Rock" and it was "clear from the police report . . . that what happened on the second day was in Castle Rock." 1 VRP at 6. The State admitted it was "a mistake" to designate Lewis County as the location of the offense in the information, but argued that it was nevertheless permitted to join the offenses in a single charging document as either acts of "the same or similar character" or "a single scheme or plan" under the joinder provision in CrR 4.3(a). 1 VRP at 6-7.

When the trial court clarified that this was an objection to venue, not joinder, the State argued that the court had authority to hear count III in Lewis County "in the interest of justice, in the interest of judicial economy," because it occurred "just a few hours after" the other two counts

and involved the same witnesses. 1 VRP at 7. The State did not expressly argue that Streiff had waived his venue challenge by failing to raise it earlier.

The trial court denied Streiff's motion to sever or dismiss count III, finding that it had jurisdiction and count III was "closely related" to the other counts charged. 1 VRP at 8.[3]

B.      Venue

Article I, section 22 of the Washington Constitution provides, "In criminal prosecutions the accused shall have the right . . . to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed." CrR 5.1(a) also mandates, "All actions shall be commenced" in either the county "where the offense was committed" or "any county wherein an element of the offense was committed or occurred."

Ordinarily, we review a trial court's decisions regarding venue for an abuse of discretion. *State v. Stearman*, 187 Wn. App. 257, 264, 348 P.3d 394 (2015). The trial court has discretion where the motion to change venue alleges that the defendant may receive an unfair trial in the prosecuting county or be prejudiced by pretrial publicity. *See, e.g.*, *State v. Clark*, 143 Wn.2d 731, 756, 24 P.3d 1006 (2001); *State v. Munzanreder*, 199 Wn. App. 162, 180, 398 P.3d 1160 (2017). But where the defendant's motion to change venue alleges that the prosecution is in an improper county, the court rules do not provide the trial court with discretion. *Compare* CrR 5.2(a) ("The court *shall* order a change of venue upon motion and showing that the action has not been prosecuted in the proper county." (emphasis added)), *with* CrR 5.2(b) ("The court *may* order a change of venue . . . [u]pon written agreement of the prosecuting attorney and the defendant . . .

_____

[3] A third amended information was filed on July 24, 2019, during trial. This information corrected CMJ's date of birth in counts I and III, but nothing else changed from the second amended information.

[or u]pon motion of the defendant, supported by affidavit that [they believe they] cannot receive a fair trial in the county where the action is pending." (emphasis added)). When the venue is improper, the court rules mandate that the trial court order a change of venue. CrR 5.2(a).

Because improper venue is a constitutional error, we will reverse and remand "unless the error was harmless beyond a reasonable doubt." *Stearman*, 187 Wn. App. at 271. Where "*no* facts at trial established [proper] venue, this error cannot be harmless." *Id.* at 272. Otherwise, the constitutional right "would lose all force." *Id.*

1.      Timeliness of the objection

The constitutional right to proper venue is waived if not timely challenged. *State v. McCorkell*, 63 Wn. App. 798, 800, 822 P.2d 795 (1992). When cases are filed pursuant to CrR 5.1(b), which applies "[w]hen there is reasonable doubt whether an offense has been committed in one of two or more counties," then CrR 5.1(c) requires that "[a]ny objection to venue must be made as soon after the initial pleading is filed as the defendant has knowledge upon which to make it." The State argues that Streiff waived his challenge to venue on count III under CrR 5.1(b) and (c) by not raising venue as soon as he had knowledge sufficient to make an objection.

But "there can be no presumption in favor of waiver of a constitutional right." *State v. Kells*, 134 Wn.2d 309, 314, 949 P.2d 818 (1998). The burden of proof falls on the party claiming a constitutional right was waived. *See, e.g.*, *id.* (requiring the State to prove waiver of a defendant's constitutional right to appeal); *see also City of Seattle v. Klein*, 161 Wn.2d 554, 561, 166 P.3d 1149 (2007) ("[O]ur case law mandates that waiver must be affirmatively proved by the State."). Thus, the State must demonstrate that Streiff waived his constitutional right to proper venue.

The State has failed to satisfy its burden here. After Streiff objected to venue, the State told the trial court that the basis for count III had been previously "discussed." 1 VRP at 6. But aside from this fleeting comment, the State fails to point to any evidence in the record proving that Streiff knew count III was based on conduct alleged in Cowlitz County prior to July 18, 2019, when the second amended information was filed and the reference to Lewis County was deleted from the charging language.

When the State added count III, it used language that was nearly identical to the language charging count I. The only difference was that count I was alleged to have occurred on or about and between August 11 through August 12, 2018 and count III was alleged to have occurred on or about August 12, 2018. The party in Lewis County occurred on the night of August 11, 2018 and continued into the morning hours of August 12, 2018. Therefore, the fact that count III alleged conduct occurring on August 12, 2018 was insufficient to provide notice that the State was alleging conduct occurring in Cowlitz County. Moreover, the affidavit of probable cause alleged that the defendant laid on top of CMJ twice, in two different rooms, after the party in Lewis County.

The State has not provided sufficient evidence in this record to establish that Streiff knew count III was based on conduct occurring in Cowlitz County, rather than a second incident in Lewis County, prior to the State's filing of a second amended information on July 18, 2019. The State has failed to establish that Streiff's objection to venue was untimely under these circumstances.

2.      Propriety of venue for count III

The State also contends that count III was properly tried in Lewis County with count I because the counts involved one victim and a "continuing course of conduct." Br. of Resp't at 21. We disagree.

8

Where a single offense occurs in more than one county, either venue is proper. *State v. Rockl*, 130 Wn. App. 293, 298, 122 P.3d 759 (2005). But separate offenses should be consolidated for trial as "related offenses" only if the offenses are "within the jurisdiction *and venue* of the same court and are based on the same conduct." CrR 4.3.1(b)(1) (emphasis added).

Here, it is undisputed that the facts giving rise to count III occurred in Cowlitz County. When Streiff raised his objection to venue before the trial court, the State conceded it was "a mistake" to designate Lewis County in the amended information. 1 VRP at 6. On appeal, the State again describes language specifying Lewis County in the information as a "scrivener's error." Br. of Resp't at 23.

The State nevertheless argues that the facts supporting counts I and III constituted a continuing course of conduct because they involved the same victim and occurred close in time to one another. But the cases cited in the State's briefing define "continuing course of conduct" in the context of deciding whether a unanimity instruction is required, a question that is distinct from venue. *See State v. Rodriquez*, 187 Wn. App. 922, 936, 352 P.3d 200 (2015); *State v. Locke*, 175 Wn. App. 779, 801-02, 307 P.3d 771 (2013).

The State's arguments that venue was proper in Lewis County because the actions underlying counts I and III were related and part of a continuing course of conduct fail. Even where offenses are based on the same conduct, their consolidation for trial as "related offenses" is appropriate only when they occurred within the jurisdiction and venue of the same court. CrR 4.3.1(b)(1). And the continuing course of conduct inquiry decides whether a unanimity instruction

9

is required, not whether venue is proper. *See Rodriquez*, 187 Wn. App. at 936; *Locke*, 175 Wn. App. at 801-02.[4]

The facts giving rise to count III occurred in a different county than the facts giving rise to count I, even though they involved the same victim and occurred within a short period of time. Streiff timely objected to venue on count III, and he showed that the facts underlying count III occurred in Cowlitz County. The State agreed that the incident occurred in Cowlitz County, and the evidence at trial proved that the incident occurred in Cowlitz County. The trial court improperly denied Streiff's motion to sever or dismiss count III on the basis of improper venue. *See* CrR 5.2(a).

This was not a harmless error because no facts at trial established venue in Lewis County as proper on count III. *See Stearman*, 187 Wn. App. at 272. "[I]f we held that constitutional error about venue were harmless even where *no* facts supported venue in the county where trial occurred, the constitutional right to venue would lose all force." *Id.*

We reverse Streiff's conviction for count III and dismiss without prejudice to the State's right to refile in the appropriate venue. Reversal of count III will require resentencing on remand.

Because we reverse count III based on improper venue, we need not reach Streiff's argument that vicinage was also improper. Because Streiff must be resentenced, we need not reach Streiff's arguments regarding double jeopardy, the length of community custody imposed, or indeterminate sentencing. Nor do we need to reach Streiff's ineffective assistance of counsel claims relating to venue, vicinage, double jeopardy, or sentencing errors.

---

[4] The trial court's determination that it had jurisdiction was also not relevant to the separate question of proper venue. *See* RCW 9A.04.030; *State v. Norman*, 145 Wn.2d 578, 589, 40 P.3d 1161 (2002) ("Generally, proof that the crime was committed in the state satisfies the jurisdictional element.").

II. SUFFICIENCY OF THE EVIDENCE FOR COUNT I

Streiff next argues there was insufficient evidence to sustain a conviction for third degree child molestation for count I because sexual contact requires the touching of "'sexual or other intimate parts'" and "[a]t most, Mr. Streiff laid on top of [CMJ] and kissed her on the lips." Br. of Appellant at 20-21 (quoting RCW 9A.44.010(2)). We disagree.

The State must prove every element of the charged offense beyond a reasonable doubt. *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016) (citing U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3). When reviewing a claim of insufficient evidence, we ask whether a rational trier of fact could find that the State proved all of the crime's essential elements beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). We accept the State's evidence as true, view all the evidence in the light most favorable to the State, and draw all reasonable inferences from the evidence in the State's favor. *Id.* at 265-66. Both circumstantial and direct evidence are considered equally reliable. *Id.* at 266.

"A person is guilty of child molestation in the third degree when the person has . . . sexual contact with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." RCW 9A.44.089(1). "'Sexual contact' means any touching of the sexual or other intimate parts of a person done for the purpose of gratifying sexual desire of either party or a third party." RCW 9A.44.010(2).

"Contact is 'intimate' within the meaning of the statute if the contact is of such a nature that a person of common intelligence could fairly be expected to know that, under the circumstances, the parts touched were intimate and therefore the touching was improper." *State v.*

*Jackson*, 145 Wn. App. 814, 819, 187 P.3d 321 (2008). "Which anatomical areas, apart from genitalia and breast, are 'intimate' is a question for the trier of fact." *Id.*

Evidence of sexual gratification shows that the touching was not "inadvertent." *State v. T.E.H.*, 91 Wn. App. 908, 916, 960 P.2d 441 (1998). Sexual gratification is not an essential element of the offense, but it clarifies the meaning of sexual contact, which is an essential element of the offense. *State v. Lorenz*, 152 Wn.2d 22, 34-35, 93 P.3d 133 (2004). We look to the totality of the circumstances to determine whether sexual contact was established. *State v. Harstad*, 153 Wn. App. 10, 21, 218 P.3d 624 (2009).

Streiff relies on *State v. R.P.*, 122 Wn.2d 735, 736, 862 P.2d 127 (1993) (per curiam), where the defendant picked up a classmate against her will, hugged her, "kissed" her, and "placed what is commonly referred to as a 'hickey' or 'passion mark' on her right neck area." In *R.P.*, the Washington Supreme Court reversed the defendant's conviction for indecent liberties, which also requires proof of sexual contact as defined in RCW 9A.44.010(2), because there was insufficient evidence of sexual contact. *Id.* But the court did not explain whether it reversed because it determined that the acts were not sexual or because it determined that the neck was not an intimate part of the body.

In *State v. Allen*, 57 Wn. App. 134, 138-39, 787 P.2d 566 (1990), the State described multiple incidents to support a single charge of indecent liberties. One of the incidents occurred when the defendant "picked [the victim] up and placed her on a table . . . and kissed her." *Id.* at 139. The court declared, "*All* of the foregoing acts . . . constitute indecent liberties." *Id.* (emphasis added). Contrary to Streiff's argument, this conclusion shows that kissing alone can be sufficient to satisfy the element of sexual contact in at least some circumstances.

12

In sum, the only contact that Washington courts have determined is categorically sexual contact is direct contact with genital organs or breasts. Otherwise, whether the contact is sexual or intimate within the meaning of the statute is a factual question for the jury to determine. *Jackson*, 145 Wn. App. at 819. And kissing has been enough to constitute sexual contact in at least one case. *Allen*, 57 Wn. App. at 139. We decline to expand upon what is categorically sexual contact and instead rely on juries to apply their "common intelligence" and evaluate the specific circumstances of each case. *Jackson*, 145 Wn. App. at 819.

Here, Streiff, an adult man, twice got on top of CMJ, a 14-year-old girl, while she was trying to sleep and kissed her, or attempted to kiss her, on the lips. Applying the test articulated in *Jackson*, "a person of common intelligence could fairly be expected to know that, under the circumstances," CMJ's lips were an "intimate" part of her and, therefore, the touching was improper. 145 Wn. App. at 819. Moreover, this case is different from *R.P.* because here the defendant climbed on top of the victim while she was lying down.

CMJ also testified that, in addition to getting on top of her and kissing her, Streiff grabbed her hand when she tried to leave, told her to "come cuddle with him," and started unzipping his pants. 1 VRP at 167. The jury may have considered this additional testimony as evidence that Streiff kissed CMJ for purposes of his sexual gratification and, therefore, the kissing was sexual contact. *See Harstad*, 153 Wn. App. at 21 (considering the totality of the circumstances when reviewing the element of sexual contact).

We hold that sufficient evidence supports Streiff's conviction for third degree child molestation for count I.

### III. SUPPRESSION OF STATEMENTS TO SCRIVNER

Following a CrR 3.5 hearing where Scrivner testified, the trial court entered an order finding that Scrivner conducted an interview at Streiff's home, the interview was prearranged, and Streiff invited Scrivner inside. The trial court found that Streiff was not arrested or read his *Miranda* rights, and the interview lasted "approximately 45 minutes, until [Streiff] told . . . Scrivner he did not want to answer any more questions." CP at 82. The trial court further found that Scrivner "touched [Streiff's] shoulder and knee in a friendly manner for purposes of facilitating the conversation," Streiff told Scrivner "he did not want to be asked particular questions," and there was no coercion. CP at 83.

According to the trial court's findings of fact, the only disputed fact was whether Streiff was in custody for purposes of *Miranda* "because the officer touched him and continued to ask him questions." CP at 83. The trial court concluded that Scrivner's touching was "an innocuous thing, not a threat of force or anything that would make the statements involuntary," and that Streiff "was able to end the interview effectively and he did that when he asked [Scrivner] to leave." CP at 83. The trial court found Streiff's statements voluntary, noncustodial, and admissible in the State's case in chief.

Streiff argues his interview with Scrivner was a custodial interrogation, so Scrivner's failure to give *Miranda* warnings requires suppression of Streiff's statements. Streiff points to Scrivner's continued touching and questioning of Streiff during the interview to argue that Streiff was not free to leave. We disagree.

A.      Interrogation in a Home

Statements made during a custodial interrogation are inadmissible at trial unless procedural safeguards are in place to protect the privilege against self-incrimination. *Miranda*, 384 U.S. at 444. "[C]ustodial interrogation" is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* To determine whether a person was in custody for purposes of *Miranda*, we ask "whether a reasonable person in a suspect's position would have felt that [their] freedom was curtailed to the degree associated with a formal arrest." *State v. Heritage*, 152 Wn.2d 210, 218, 95 P.3d 345 (2004) (citing *Berkemer v. McCarty*, 468 U.S. 420, 441-42, 104 S. Ct. 3138, 82 L. Ed. 2d 317 (1984)).

When reviewing a CrR 3.5 ruling, we review challenged findings of fact for substantial evidence and consider de novo whether the conclusions of law are supported by the findings of fact. *State v. Rosas-Miranda*, 176 Wn. App. 773, 779, 309 P.3d 728 (2013). "'Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.'" *State v. Grogan*, 147 Wn. App. 511, 516, 195 P.3d 1017 (2008) (internal quotation marks omitted) (quoting *State v. Solomon*, 114 Wn. App. 781, 789, 60 P.3d 1215 (2002)). Whether a suspect was in custody is a question of law reviewed de novo. *State v. Escalante*, 195 Wn.2d 526, 531, 461 P.3d 1183 (2020). We look to the totality of the circumstances. *Rosas-Miranda*, 176 Wn. App. at 779.

When reviewing an "in-home interrogation," we consider "the extent to which the circumstances of the interrogation turned the otherwise comfortable and familiar surroundings of the home into a 'police-dominated atmosphere,'" and we apply four factors that the Ninth Circuit

has identified as relevant. *Rosas-Miranda*, 176 Wn. App. at 782-83 (quoting *United States v. Craighead*, 539 F.3d 1073, 1083 (9th Cir. 2008)). Under *Craighead*, we consider

> (1) the number of law enforcement personnel and whether they were armed; (2) whether the suspect was at any point restrained, either by physical force or by threats; (3) whether the suspect was isolated from others; and (4) whether the suspect was informed that [they were] free to leave or terminate the interview, and the context in which any such statements were made.

539 F.3d at 1084; *see also Rosas-Miranda*, 176 Wn. App. at 784 (applying the *Craighead* factors). Streiff does not make arguments that implicate the first and third *Craighead* factors, focusing instead on facts related to the second and fourth *Craighead* factors.

B.      Streiff's Interview

Streiff challenges multiple findings of fact, including that Scrivner "did not arrest" Streiff, that the interview lasted until Streiff said "he did not want to answer any more questions," that Scrivner touched Streiff "in a friendly manner for purposes of facilitating the conversation," and that there was no coercion. CP at 82-83. He also challenges the trial court's conclusions that Streiff was "able to end the interview effectively" by asking Scrivner to leave, that Scrivner's touching was "innocuous" and "not a threat of force," that his statements were voluntary and noncustodial, and that his statements were admissible. CP at 83. These arguments implicate the second and fourth *Craighead* factors: whether Scrivner's touching amounted to "physical force" or "threats" that restrained Streiff, and whether Streiff knew that he "was free to leave or terminate the interview." 539 F.3d at 1084.

The trial court's factual findings are supported by Scrivner's testimony that he touched Streiff only "in a friendly way" and he left "maybe a minute or two" after Streiff asked him to leave. 1 VRP at 125, 134. Streiff seems to complain that Scrivner's touching was not "'friendly'"

16

because it was "part of the method by which [Scrivner] was trying to extract a confession." Br. of Appellant at 27. But that is simply the nature of an interrogation. An officer's attempt to extract a confession does not, without more, render the environment custodial. And the trial court did not find that Scrivner touched Streiff for a friendly purpose; it found that Scrivner touched Streiff "in a friendly manner." CP at 83. There is no reason for this court to depart from undisputed finding of fact 1.5 regarding *the manner* in which Scrivner touched Streiff.

Scrivner further testified that he touched Streiff's shoulder for a "[f]ew seconds," a few times, but not "very often." 1 VRP at 129, 133. He also admitted that it was "possible" he touched Streiff's knee in a similar manner. 1 VRP at 133. Scrivner explained that this was momentary contact intended to make Streiff feel comfortable disclosing information, not contact intended to restrain Streiff's movement. The testimony did not show that Scrivner's touching was aggressive or restrictive, so the trial court appropriately concluded that it was "not a threat of force." CP at 83. Moreover, when Streiff asked Scrivner to stop touching him, Scrivner complied. Substantial evidence supports the trial court's findings of fact, and the trial court's conclusion is supported by the facts. The second *Craighead* factor weighs in favor of concluding that the interview was noncustodial.

There was also substantial evidence to support the trial court's finding that the interview lasted until Streiff refused to answer more questions and the trial court's conclusion that Streiff was able to end the interview effectively. CP at 82-83. Although Scrivner did not expressly inform Streiff that he could terminate the interview, Scrivner never indicated that Streiff was required to complete the interview. And Streiff appeared comfortable with asking Scrivner to terminate particular lines of questioning, as well as the interview itself. Streiff requested that Scrivner stop

17

asking particular questions about touching CMJ and KLW, and Scrivner "continued to question but . . . changed [the wording of the] questioning." 1 VRP at 133. Streiff asked Scrivner to leave, the interview ended, and Scrivner left Streiff's home "maybe a minute or two" later. 1 VRP at 134. Thus, the trial court's findings on Streiff's ability to terminate the interview were supported by the evidence, and the trial court's conclusion was again supported by the facts. The fourth *Craighead* factor also weighs in favor of concluding that the interview was noncustodial.

Streiff's arguments do not implicate any of the other *Craighead* factors. The trial court's findings support its conclusions that Streiff's statements were voluntary, noncustodial, and admissible. CP at 83.

IV. OPINION TESTIMONY

Streiff claims that "a series of witnesses, including a police officer, gave conclusions that Mr. Streiff had actually committed sexual assaults." Br. of Appellant at 41.[5] Streiff argues this was improper opinion testimony warranting a new trial. We disagree.

At trial, Scrivner testified regarding conversations he had with CMJ. He stated, "I found out that [CMJ] was . . . at a birthday party . . . and at this birthday party she was sexually assaulted by a gentleman named Jason Streiff," and then, "I found out that her cousin was also sexually assaulted at the same event." 2 VRP at 339-40.

Scrivner also testified about his interview with Streiff. He told the jury that when he asked Streiff about what happened at the birthday party, he "immediately noticed [that Streiff's] body

---

[5] Although Streiff raises this issue with respect to "a series of witnesses," he specifically identifies and analyzes statements made by Scrivner. Br. of Appellant at 41. To the extent that he is challenging other witnesses' responses to questions by the prosecutor, that issue is addressed in the following section on prosecutorial misconduct.

language [and] demeanor changed," saying, "And what I mean by that, [Streiff] instantly moved backwards, crossed his arms, crossed his legs, and became very defensive." 2 VRP at 344. Scrivner explained that during the interview, he continued "rephrasing" his questions regarding what happened at the party, "essentially downplaying the crime itself," and he told Streiff that "if he continued down this path to not tell the truth that it's going to be difficult for [the victims' families] to ever forgive him." 2 VRP at 346-47. Streiff did not object to any of this testimony at trial.

We will reverse if improper opinion testimony regarding a defendant's guilt violates the defendant's constitutional right to a jury trial. *State v. King*, 167 Wn.2d 324, 329-30, 219 P.3d 642 (2009). The Supreme Court has recognized that juries are "especially likely" to be influenced by an officer's trial testimony because it "may often 'carr[y] an aura of special reliability and trustworthiness.'" *State v. Demery*, 144 Wn.2d 753, 762-63, 30 P.3d 1278 (2001) (alteration in original) (internal quotation marks omitted) (quoting *United States v. Espinosa*, 827 F.2d 604, 613 (9th Cir. 1987)). But there is "no manifest error" where the challenged testimony "is simply an account of the interview protocol [the officer] used." *State v. Kirkman*, 159 Wn.2d 918, 931, 155 P.3d 125 (2007); *see also Demery*, 144 Wn.2d at 761 (explaining that an officer's statements "do not constitute even indirect opinion evidence" where they are "designed solely to see whether the defendant would change his story during [an] interview").

Here, the statements that Streiff identifies were not opinions. First, the testimony was clear that when Scrivner said he "found out" about the assaults, he was referring to what the victims told him. 2 VRP at 339-40. The first such statement was made in response to the question, "[W]hat did you find out during that conversation with [CMJ]?", and the second was preceded by the phrase

"[d]uring my interview with [CMJ]." *Id.* It is clear from the context that Scrivner was not testifying to his personal opinions about what happened.

Scrivner's testimony regarding Streiff's body language was not opinion testimony either. Before trial, Streiff's counsel advised that he "would object to [Scrivner] being able to identify his opinion or belief on [Streiff] being deceptive" based on his body language. 1 VRP at 16. The State attempted to lay a foundation for the admissibility of this opinion testimony, and Scrivner testified that he took an FBI course that "teaches you about what body language appears to be deceptive." 1 VRP at 115. The trial court ruled that Scrivner could testify about his observations of Streiff's body language, but he was not permitted to offer conclusions as to what the body language meant. When Scrivner testified that Streiff "instantly moved backwards, crossed his arms, crossed his legs, and became very defensive," he was testifying to the movements he observed, not offering an opinion about what they meant. 2 VRP at 344.

Next, Streiff misunderstands Scrivner's testimony that he was "essentially downplaying the crime itself." 2 VRP at 346. Scrivner was explaining his interrogation strategy, not actually downplaying the crime or insinuating that Streiff downplayed the crime.

Similarly, it is clear from the transcript that when Scrivner told Streiff that "if he continued down this path to not tell the truth that it's going to be difficult for [the victims' families] to ever forgive him," Scrivner was explaining his interrogation strategy, not testifying to whether he personally believed Streiff was lying. 3 VRP at 347. Scrivner was responding to the prosecutor's question, "[A]*s part of you trying to get* [*Streiff*] *to talk to you*, did you bring up the relationship [between him and the victims' families]?" *Id.* (emphasis added). Where the challenged testimony

20

"is simply an account of the interview protocol [the officer] used," there is "no manifest error" that enables this court to review the claim or grant relief. *Kirkman*, 159 Wn.2d at 931.

There was no opinion testimony here and no manifest error of constitutional magnitude warranting reversal.

Streiff also argues that his counsel was deficient for failing to object to improper opinion testimony. Ineffective assistance of counsel is a two-pronged inquiry. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). Streiff must show that his counsel's performance was deficient and that counsel's deficient performance prejudiced him. *Id.* at 32-33. A failure to prove either prong ends our inquiry. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

Scrivner's testimony was not opinion evidence, so any objection would have been unsuccessful. Counsel was therefore not deficient for failing to object.

V. PROSECUTORIAL MISCONDUCT

Streiff also contends that the prosecutor asked witnesses questions that "assumed Mr. Streiff had actually committed sexual assaults." Br. of Appellant at 41. He challenges questions posed during direct examination of the State's witnesses where the language assumed an assault had occurred. *E.g.*, 2 VRP at 284, 317 (questions regarding behavioral changes in the victims "[a]fter the assault" or "since the assault"). Streiff's counsel objected to some of these questions, and the trial court sustained at least one objection.

Streiff also contends that the prosecutor committed reversible misconduct during closing argument when she encouraged the jury to hold Streiff "accountable" and drew upon the image of the "scales of justice" before arguing, "[T]here's a balance. And in this case I want you to put all

the witnesses that came here and all the evidence that has been introduced . . . and that balance falls for justice." 3 VRP at 410, 444.

To establish prosecutorial misconduct, a defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

A.      Questioning of Witnesses

It is improper for a prosecutor to express an opinion regarding "the credibility of witnesses or the guilt or innocence of the accused." *State v. Calvin*, 176 Wn. App. 1, 19, 316 P.3d 496 (2013). But even if some of the prosecutor's questions here were improper, there was not a "substantial likelihood" that the questions affected the jury's verdict. *Emery*, 174 Wn.2d at 760. Both victims gave clear and unwavering testimony regarding Streiff's conduct after the party. They both reported the incidents soon after they occurred, and their descriptions were of similar conduct. There is no indication that how the prosecutor worded her questions affected the jury. Thus, we conclude that even if there were error, Streiff has failed to show prejudice.

B.      Closing Argument

Where a defendant fails to object to alleged prosecutorial misconduct, "the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *Emery*, 174 Wn.2d at 760-61. To meet this heightened standard, "the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" *Id.* at 761 (quoting

*State v. Thorgerson*, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)). Streiff did not object to the prosecutor's closing arguments that he now challenges on appeal.

During its closing remarks, the State may not inflame or mislead the jury. Streiff relies on *State v. Walker*, 182 Wn.2d 463, 341 P.3d 976 (2015), and *In re Personal Restraint of Glasmann*, 175 Wn.2d 696, 286 P.3d 673 (2012), two cases where the Supreme Court reversed convictions after prosecutors presented inflammatory and misleading PowerPoint presentations during their closing arguments. In *Walker*, the prosecutor's PowerPoint "included multiple exhibits that were altered with inflammatory captions and superimposed text; . . . it plainly juxtaposed photographs of the victim with photographs of Walker and his family, some altered with racially inflammatory text; and it repeatedly and emphatically expressed a personal opinion on Walker's guilt." 182 Wn.2d at 478. The slides shown to the jury in *Glasmann* included multiple pictures of the defendant with "'GUILTY'" superimposed across them in red text. 175 Wn.2d at 702.

Streiff contends that the prosecutor's invitations to hold Streiff accountable and to consider all of the witnesses that the State presented on one side of the scales of justice were inappropriate appeals to emotion and misleading remarks about the State's burden of proof. Unlike the pervasive and intentionally inflammatory remarks in *Walker* and *Glasmann*, the prosecutor's comments here were brief, and they were not directed at inflaming the jury's passions against Streiff as an individual.

The jury was instructed to "not let . . . emotions overcome [their] rational thought process," to "reach [a] decision based on the facts proved[,] . . . not on sympathy, prejudice, or personal preference," and to "act impartially." CP at 53. These instructions could have been repeated to remind the jury that their role was not to hold the defendant accountable, but rather to weigh the

23

evidence dispassionately. The jury was also instructed that the State "has the burden of proving each element of the crimes charged beyond a reasonable doubt" and that the defendant "has no burden." CP at 54. Had this instruction been repeated, it would have clarified the State's burden of proof, as well as the fact that Streiff had no burden. The prosecutor's closing remarks here were not so ill intentioned and inflammatory that any potential prejudice was incurable.

C.       Ineffective Assistance of Counsel

Streiff also claims that his counsel was ineffective for failing to object to the prosecutor's questioning or closing statements.

Under an ineffective assistance of counsel analysis, prejudice ensues if the result of the proceeding would have been different, had defense counsel not performed deficiently. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). A prosecutor's comments during closing argument are reviewed "in the context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions." *State v. Jones*, 144 Wn. App. 284, 290, 183 P.3d 307 (2008).

Even if the failure to object during the prosecutor's questioning of the State's witnesses were deficient, Streiff did not demonstrate that he suffered prejudice as a result. As explained above, both victims gave clear and unwavering testimony regarding Streiff's conduct after the party. There is no indication that the failure to object to the prosecutor's questions prejudiced Streiff.

As for closing arguments, the prosecutor told the jury during closing, "I have to prove to you beyond a reasonable doubt all the elements of the crimes [Streiff is] charged with." 3 VRP at 398. The jury was also instructed regarding its dispassionate role in the judicial system and the

24

applicable burden of proof. Considering the context of the prosecutor's argument and the jury instructions, we hold that any error by defense counsel here did not prejudice Streiff.

## VI. TO CONVICT INSTRUCTIONS

Streiff next argues that the use of initials to identify the victims in the to convict instructions was an unconstitutional comment on the evidence and a violation of his right to a public trial. He also argues that the inclusion of birth dates in the to convict instructions reduced the State's burden of proof. The use of initials was legally permissible. The inclusion of birth dates was an unconstitutional comment on the evidence, but it was a harmless error.

A.      Initials in the To Convict Instructions

The to convict jury instruction for count I included the following:

> To convict the defendant of the crime of child molestation in the third degree, as charged in count I, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about and between August 11th, 2018 and August 12th, 2018, the defendant had sexual contact with [CMJ] (DOB: 06/16/2004);
>
> (2) That [CMJ] was at least fourteen years old but less than sixteen years old at the time of the sexual contact and was not married to the defendant.

CP at 57. A similar format was used for counts II and III.

Article IV, section 16 of the Washington Constitution precludes a judge from "'conveying to the jury his or her personal attitudes toward the merits of the case' or instructing a jury that 'matters of fact have been established as a matter of law.'" *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006) (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). "[A]ny remark that has the potential effect of suggesting that the jury need not consider an element of an offense could qualify as judicial comment." *Id.*

Division One of this court recently addressed the question of whether the use of initials in to convict instructions is a comment on the evidence. *State v. Mansour*, 14 Wn. App. 2d 323, 329, 470 P.3d 543 (2020), *review denied*, 479 P.3d 708 (2021). Division One held that because the victim's name is not a factual question to be resolved by the jury, including the victim's name in the instructions in any form "did not impermissibly instruct the jury that a matter of fact had been established as a matter of law." *Id.* at 330. Division One also rejected the argument that jurors would interpret the initials as an indication that the court believed the defendant was guilty, noting that even the use of the word "'victim'" by the trial court has "'ordinarily been held not to convey to the jury the court's personal opinion of the case.'" *Id.* (quoting *State v. Alger*, 31 Wn. App. 244, 249, 640 P.2d 44 (1982)).

Both the Sixth Amendment to the United States Constitution and article I, section 10 of the Washington Constitution guarantee the right to a public trial. *State v. Turpin*, 190 Wn. App. 815, 818, 360 P.3d 965 (2015). We review whether a violation of the right to a public trial occurred de novo. *Id.* But first, we determine whether the public trial right is implicated and whether a closure has in fact occurred. *State v. Smith*, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). Only if the answer to both of these preliminary questions is yes do we determine whether the closure was justified. *Id.*

In *Mansour*, Division One held that there was no court closure where the to convict instructions used the victim's initials but the victim "testified using her full name in open court and was consistently referred to by her full name throughout the proceedings . . . [and her] name was fully accessible to spectators and open to any member of the public who appeared in court or read a transcript of the court proceedings." 14 Wn. App. 2d at 333.

Here, each victim was referred to by only her initials in the to convict instructions. We follow *Mansour* and hold that this practice does not constitute a judicial comment on the evidence. *Id.* at 330. In addition, the record here undermines Streiff's argument. When the trial court read the to convict instructions to the jury, the judge used the victims' full names, lessening any potential impression that the judge believed the victims should be referred to only by their initials.

Further, like in *Mansour*, each victim testified using her full name and was consistently referred to by her full name throughout the proceedings. The victims' names were fully accessible to spectators and available to any member of the public who appeared in court or read a transcript. Therefore, use of the victims' initials in the to convict instructions did not amount to a court closure. *See id.* at 333.

B.     Birth Dates in the To Convict Instructions

The inclusion of a victim's birth date in the to convict instruction "is an improper judicial comment when an element of the crime is the victim's minority." *State v. Zimmerman*, 135 Wn. App. 970, 973, 146 P.3d 1224 (2006); *see also State v. Jackman*, 156 Wn.2d 736, 744, 132 P.3d 136 (2006) ("By stating the victims' birth dates in the instructions, the court conveyed the impression that those dates had been proved to be true."). We have previously held that this practice is unconstitutional specifically where the defendant is charged with child molestation. *See Zimmerman*, 135 Wn. App. at 973-74.

We presume an instructional error is prejudicial, "unless it affirmatively appears to be harmless." *State v. Clausing*, 147 Wn.2d 620, 628, 56 P.3d 550 (2002). A constitutional error is harmless "if the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt." *State v. Watt*, 160 Wn.2d 626, 636, 160 P.3d 640 (2007).

Here, the trial court erred by including the victims' birth dates in the to convict instructions. When the State charges a defendant with third degree child molestation, it is required to prove the victim's age as an essential element of the offense. RCW 9A.44.089(1). And the to convict instructions here suggested to the jury that this element was already proved. The jury could have simply calculated the difference between the two dates listed under the first element—the offense date and the birth date—and found the age element satisfied on that basis alone. This is an unconstitutional comment on the evidence. *See Zimmerman*, 135 Wn. App. at 973-74.

However, the error here was harmless because overwhelming untainted evidence supported the age element. The State proved the victims' ages at trial. *See* 1 VRP at 162 ("So how old were you in August 2018?" "14." (direct examination of CMJ)); 2 VRP at 265 ("And in August 2018, how old were you then?" "15." (direct examination of KLW)); *see also* 2 VRP at 341 (Scrivner confirming CMJ's and KLW's birth dates). And the defense did not dispute the victims' ages at trial—their testimony about how old they were at the time of the offense was unrebutted. Even when the State amended the jury instructions specifically because one of the included birth dates was incorrect, Streiff did not object. Thus, the inclusion of the victims' birth dates in the to convict instructions was error, but it was harmless.

C.    Ineffective Assistance of Counsel

Streiff also argues that his counsel was ineffective for failing to object to the to convict instructions. The use of initials in the to convict instruction was lawful, so counsel was not deficient for failing to object on that issue. The inclusion of birth dates in the to convict instruction was an error, but it was harmless, so Streiff was not prejudiced by his counsel's failure to object.

None of Streiff's challenges to the jury instructions warrants reversal.

No. 54170-0-II

VII. CUMULATIVE ERROR

Finally, Streiff asks this court to reverse his remaining convictions based on cumulative error. With the exception of the error regarding venue, we conclude that any remaining trial errors were "few and [had] little or no effect on the outcome of the trial." *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Streiff was not deprived of a fair trial by cumulative error.

CONCLUSION

We reverse count III without prejudice, affirm counts I and II, and remand for resentencing consistent with this court's opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, P.J.

Maxa, J.

29